### Josephine S. ALOBAIDI, Appellant

v.

### The UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, Appellee.

### No. 14–06–00303–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 30, 2007.

---

**6.** Texas Shutters's brief does not respond to this contention.

William V. Wade, Houston, for appellant.

Adam Warren Aston, Christopher John Coppola, Austin, for appellee.

Panel consists of Justices ANDERSON, FROST, and MIRABAL.*

## OPINION

KEM THOMPSON FROST, Justice.

In this retaliatory-discharge case, a former employee challenges the trial court's order granting the plea to the jurisdiction

---

* Senior Justice Margaret Garner Mirabal, sitting by assignment.

filed by her former employer, a university center. The former employee contends that (1) the university center waived sovereign immunity by previously having pursued an appeal of her workers' compensation award and (2) prohibiting her from using the state courts to pursue her Labor Code chapter 451 retaliatory discharge claim[1] against that institution violates the state and federal equal protection, due process, and due course of law clauses. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2001, appellant Josephine Alobaidi filed a workers' compensation claim alleging she had sustained a chemical-inhalation injury while working at The University of Texas Health Science Center at Houston, which is part of The University of Texas System. *See* TEX. EDUC.CODE ANN. § 65.02(a)(9) (Vernon 2002). The University of Texas System was the party against whom Alobaidi asserted her workers' compensation claim, but Alobaidi named only The University of Texas Health Science Center at Houston as the defendant in this anti-retaliation suit. Because the difference between these two entities does not affect the outcome in this case, we refer to both entities as "the Center" in this opinion.

The Center contested Alobaidi's workers' compensation claim, and Alobaidi subsequently prevailed in a contested-benefit hearing before the Hearings Division of the Texas Workers' Compensation Commission. The Center next sought relief in administrative proceedings before the Commission, and the Commission also denied relief. The Center then filed suit for judicial review in the Harris County District Court, alleging Alobaidi had not sustained a compensable injury. Following a bench trial, the district court rendered judgment against the Center and ordered

it to pay Alobaidi attorney's fees of $23,075. The trial court announced its decision in early August 2004. A few days thereafter, the Center terminated Alobaidi's employment.

Alobaidi sued the Center in this case alleging she had been wrongfully discharged because of her workers' compensation claim. The Center responded with a plea to the jurisdiction and a motion to dismiss, alleging Alobaidi's claims were barred by the doctrine of sovereign immunity. The trial court granted the Center's plea to the jurisdiction and dismissed the case.

## II. STANDARD OF REVIEW

In this appeal, Alobaidi challenges the trial court's grant of the Center's plea to the jurisdiction and dismissal of her case. She also challenges the constitutionality of the statutes on which the trial court's decision rests. In filing a plea to the jurisdiction, a litigant challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Because subject-matter jurisdiction is a question of law, we conduct a de novo review of the trial court's ruling on the plea. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). Likewise, we also apply de novo review to questions raising constitutional concerns. *See State v. Hodges*, 92 S.W.3d 489, 494 (Tex.2002).

## III. ISSUES AND ANALYSIS

**A. Did the trial court err by holding the university center did not waive sovereign immunity by filing its district court petition to set aside the award of the Texas Workers' Compensation Commission?**

In her first issue, Alobaidi argues the trial court erred in granting the

---

1. *See* TEX. LAB.CODE ANN. §§ 451.001–.003 (Vernon 2006).

Center's plea to the jurisdiction because that institution waived sovereign immunity when it initially filed suit seeking judicial relief against her in the workers' compensation case. Alobaidi bore the burden of alleging facts that affirmatively showed the trial court had subject-matter jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). Absent the State's consent to suit, a trial court lacks subject-matter jurisdiction. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999).

■■■ Immunity from suit prohibits suits against the State unless the State expressly consents to the suit. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 696 (Tex.2003). A state agency, such as the Center, shares this immunity. *See Lowe v. Tex. Tech. Univ.,* 540 S.W.2d 297, 298 (Tex.1976); *Clark v. Univ. of Tex. Health Sci. Ctr. at Houston,* 919 S.W.2d 185, 187 (Tex.App.-Eastland 1996, writ denied). For the legislature to waive the State's sovereign immunity, a statute or resolution must contain a clear and unambiguous expression of the legislature's waiver of immunity. *Taylor,* 106 S.W.3d at 696; *see* Tex. Gov't Code Ann. § 311.034 (Vernon Supp.2006).

■■ Alobaidi concedes the legislature has not consented to workers' compensation anti-retaliation suits against the Center. *See* Tex. Lab.Code Ann. §§ 451.001, 451.002 (Vernon 2006) (providing remedies for persons discharged for having filed a workers' compensation suit); § 501.024(6) (excluding persons University of Texas employees who are covered under Chapter 503); § 503.002(a) (not including sections 451.001 and 451.002 as general workers' compensation laws applicable to The University of Texas employees); *see also Clark,* 919 S.W.2d at 187–88 (holding the Center immune from workers' compensation anti-retaliation suits). Instead, rely-

ing on *Reata Construction Corp. v. City of Dallas,* she argues the Center waived its sovereign immunity by seeking district court review of her workers' compensation award. *See* 197 S.W.3d 371 (Tex.2006).

In *Reata Construction,* the Texas Supreme Court held that a governmental entity that brings an action waives immunity from suit for claims that are germane to, connected with, and properly defensive to its action, to the extent of an offset. *Id.* at 373; *see State v. Fid. & Deposit Co. of Md.,* 223 S.W.3d 309, 310 (Tex.2007) (summarizing *Reata* holding); *Tex. Dep't of Transp. v. Precision Solar Controls, Inc.,* 220 S.W.3d 494, 494 (Tex.2007) (per curiam) (same). Thus, *Reata Construction* provides for a waiver of immunity only "to the extent [a party's] claims offset those asserted by [the state entity]." 197 S.W.3d at 373. "Once it asserts affirmative claims for monetary recovery, the [state entity] must participate in the litigation process as an ordinary litigant, save for the limitation that the [state entity] continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset the [state entity's] claims." *Id.* at 377.

In the workers' compensation case, the Center sought judicial review of the appeals panel's decision regarding compensability of Alobaidi's injury. *See* Tex. Lab. Code Ann. § 410.301 (Vernon 2006). The Center never asserted a claim for monetary relief. In its district court petition, the Center sought a take nothing judgment against Alobaidi and the costs it expended in the suit. In the present case, the Center is the defendant and has not asserted any claim for relief against Alobaidi. Therefore, there can be no offset and no waiver of sovereign immunity. *See Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture,* 220 S.W.3d 25, 32 (Tex.App.-San Antonio 2006, pet. filed)

(holding city water district—which had prayed for judgment and costs and filed a plea in abatement but had not made affirmative claims for monetary relief in suit brought by purchaser seeking specific performance—did not, by its conduct, waive governmental immunity to suit). Accordingly, we overrule Alobaidi's first issue.

## B. Do sections 501.024 and 503.002(a) of the Texas Labor Code violate the state and federal equal protection clauses?

In her second issue, Alobaidi argues that prohibiting her from using the state courts to sue the Center under the Texas Labor Code violates the equal protection clauses of the state and federal constitutions, particularly because that institution was able to maintain its earlier action in the district court.[2] Alobaidi complains of (1) Texas Labor Code section 501.024, which excludes The University of Texas and Texas A & M University employees from coverage under workers' compensation law applicable to state employees and (2) section 503.002(a), which does not incorporate sections 451.001 and 451.002 (authorizing anti-retaliation suits)

as general workers' compensation laws applicable to University of Texas employees.[3]

The federal constitution provides: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Similarly our state constitution provides: "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." Tex. Const. art. I, § 3. The federal analytical approach applies to equal protection challenges under the Texas Constitution. Bell v. Low Income Women, 95 S.W.3d 253, 266 (Tex.2002).

We presume the constitutionality of the statutes challenged in this case. See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397–98, 99 L.Ed.2d 645 (1988). Alobaidi bears the burden of proving the statutes unconstitutional. Edgewood Indep. Sch. Dist. v. Meno, 917 S.W.2d 717, 725 (Tex.1995). If the classifications in the statutes do not

2. Alobaidi states, "Here, the equal protection issue is one of the government versus a citizen." She then asks whether the government can provide itself a particular right, that is, access to the courts, against one of its citizens while at the same time denying that citizen an identical right of access to the courts in an action against the same government. To the extent we have addressed that aspect of her argument in Section III.A., above, we do not revisit it here. Moreover, Alobaidi's characterization of her equal protection issue rests on the unwarranted assumption that an action seeking review of a workers' compensation award concerns the same statutory right as an action for retaliatory discharge.

3. An identical provision applies to employees of The Texas A & M University System. See Tex. Lab.Code Ann. § 502.002(a) (Vernon 2006). The legislature enacted the predecessor to chapter 451 (the anti-retaliation provi-

sions) in 1971. See Act of April 22, 1971, 62d Leg., R.S., ch. 115, §§ 1–3, 1971 Tex. Gen. Laws 884, 884–85 (previously codified as Rev. Civ. Stat. Art. 8307c, §§ 1–3) (repealed and recodified 1993). In 1981, the legislature included the anti-retaliation provisions in a list of provisions applicable to state employees. See Act of May 31, 1981, 67th Leg. R.S., ch. 352, §§ 1–2, 1981 Tex. Gen. Laws 937, 937 (repealed and recodified 1993). The 1981 legislation did not refer to the provisions covering The University of Texas System or Texas A & M System employees. See id. §§ 1–4. The legislature's first post–1971 amendment of the predecessor to section 503.002(a) did not include the anti-retaliation provisions as sections applicable to University of Texas employees. See Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch 1, § 15.39, 1989 Tex. Gen. Laws 1, 109–10 (repealed and recodified 1993).

impinge on a fundamental right or distinguish between persons on a suspect basis, the statutes need only be rationally related to a legitimate governmental purpose to survive Alobaidi's equal-protection challenge. *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 451 (Tex.2000).

Alobaidi concedes this case does not involve a suspect class. Instead, she argues it involves a fundamental right, the "right to access the courts," grounded in the open-courts provision of the Texas Constitution. *See* Tex. Const. art. I, § 13. She then urges this court to apply a strict-scrutiny analysis. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (plurality op.).

The open-courts provision, however, does not apply to Alobaidi's claim because her claim is a statutory, rather than a common-law, claim. *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 902–03 (Tex.2000). Additionally, although statutes depriving any relief to medical-malpractice plaintiffs who fail to file a cost bond and an expert report arguably deprive such plaintiffs of "access to the courts," this court has applied a rational-basis test to those statutes. *See Andress v. MacGregor Med. Ass'n, P.A.,* 5 S.W.3d 855, 859–60 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (responding to due process challenge and looking only to whether the legislature acted arbitrarily or irrationally in attempting to achieve its stated purposes). Were this court to hold that a fundamental right is involved every time a statute deprives any person of the right to bring a statutory claim, many statutes would be subject to strict scrutiny and likely invalidation. We decline Alobaidi's invitation to apply a strict-scrutiny analysis and instead apply the rational-basis test.

"Under rational-basis review, where a group possesses 'distinguishing characteristics relevant to interests the State has the authority to implement,' a State's decision to act on the basis of those differences does not give rise to a constitutional violation." *Bd. of Trustees v. Garrett,* 531 U.S. 356, 366–67, 121 S.Ct. 955, 963, 148 L.Ed.2d 866 (2001) (quoting *City of Cleburne,* 473 U.S. at 441, 105 S.Ct. at 3255). " 'Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.' " *Id.* at 367, 121 S.Ct. at 969 (quoting *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993)). In other words, legislation survives an equal-protection challenge so long as the legislation is rationally related to a legitimate state interest. *Pennell v. City of San Jose,* 485 U.S. 1, 14, 108 S.Ct. 849, 859, 99 L.Ed.2d 1 (1988). A state interest is legitimate so long as it does not "run afoul of some specific federal constitutional prohibition, or of some valid federal law." *See Lincoln Fed. Labor Union v. N.W. Iron & Metal Co.,* 335 U.S. 525, 536, 69 S.Ct. 251, 257, 93 L.Ed. 212 (1949).

The legislative record need not show the legislature's reasons. *See Garrett,* 531 U.S. at 367, 121 S.Ct. at 964. Instead, the party challenging the constitutionality of legislation has the burden to negate " 'any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *Id.* (quoting *Heller,* 509 U.S. at 320, 113 S.Ct. at 2643) (internal quotation omitted). The rational basis a reviewing court envisions need not be the one that actually motivated the legislature. *See FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993).

In *Richards v. Texas A & M University System*, the Waco Court of Appeals explained one possible rationale:

> The A & M and UT systems are the only state educational institutions for whose employees the State has not waived sovereign immunity from suit under the Anti–Retaliation Law. Those institutions also share the distinction of being the only state educational institutions that are authorized to meet their workers' compensation obligations by self-insurance. *See* Tex. Lab.Code Ann. §§ 502.022, 503.022 (Vernon 1996). The distinction between insured and self-insuring entities can constitute a valid rational basis for a distinction between them. For example, the Supreme Court of Mississippi has held that a statute that waived sovereign immunity for municipalities that participated in an insurance plan, but did not waive it for municipalities that self-insured, did not deny equal protection. *Mosby v. Moore*, 95–CA–00672–SCT, ¶¶ 17–21 (Miss. 1998), 716 So.2d 551, 555–56.
>
> The costs of workers' compensation insurance claims and suits can be high and unpredictable. A self-insuring entity, of course, does not enjoy the primary benefits of insurance, which are to limit the entity's exposure by distributing liability over many insureds. *Cf. Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 407 (Tex.1985). The Legislature may have believed that it was necessary to protect the A & M and UT systems from the additional risks and burdens of potentially large anti-retaliation lawsuits. Although we have no reason to believe that those institutions discharge employees for filing workers' compensation claims or suits, the costs of defending against or settling employment suits, even suits that the defendant believes are groundless, can be substantial.

131 S.W.3d 550, 559–60 (Tex.App.-Waco 2004, pet. denied).

The Waco court further observed that protection of the public treasury "is one of the prime reasons for modern sovereign immunity." *Id.* at 560. In the present case, Alobaidi prayed for loss of past earnings, loss of future earnings and benefits, pain and suffering, emotional distress, loss of reputation, and "similar damage," prejudgment and postjudgment interest, attorney's fees, costs, and "such other and further relief, at law or in equity." A rational basis exists for the legislature not to waive sovereign immunity for such suits directed against a self-insuring state educational institution. *See id.; see also Clark*, 919 S.W.2d at 188.[4] Accordingly, we overrule Alobaidi's second issue.

## C. Do sections 501.024 and 503.002(a) of the Texas Labor Code violate the federal due process clause and the state due course of law provision?

In her third issue, Alobaidi argues that prohibiting her from using the state courts to sue the Center under the Texas Labor Code violates the federal due process clause and the state due course of law provision. The federal constitution provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1. Our state constitution provides: "No citizen of this State shall be

---

**4.** Alobaidi distinguishes *Richards* and *Clark* because those cases did not involve situations in which the university was the first party to avail itself of the courts. In a similar vein, she also argues she was not given the same right as the Center in this case. The Center's petition under Texas Labor section 410.301 did not involve the same type of action or statutory right as a suit under sections 451.001 and 451.002. *See* Section III.A., and n. 2, *supra*.

deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. Because Alobaidi has not asserted or briefed an argument that the substantive due process analysis under the Texas Constitution is different from that under the United States Constitution, we apply the analysis under the United States Constitution. Under the federal guarantee of substantive due process, legislation not affecting a fundamental right or interest is valid if it bears a rational relationship to a legitimate state interest. *Williamson v. Lee Optical,* 348 U.S. 483, 491, 75 S.Ct. 461, 466, 99 L.Ed. 563 (1955).

Presuming, without deciding, that a state entity's immunity from suit can ever implicate due process or due course of law concerns, we conclude the immunity at issue in this case does not.[5] As discussed in Section III.A., above, the present case does not affect a fundamental right, and as explained in Section III.B., above, declining to waive a self-insuring university system's immunity from workers' compensation anti-retaliation suits bears a rational relationship to the State's legitimate interest in conserving the university's resources. Accordingly, we overrule Alobaidi's third issue.

We affirm the trial court's judgment.

---

5. In *Federal Sign v. Texas Southern University,* the Texas Supreme Court opined, "The State's immunity to suit is, purely as a matter of sovereignty, impervious to due process concerns." 951 S.W.2d 401, 411 (Tex.1997).