Affirmed and Opinion filed October 30, 2007








Affirmed and Opinion filed October 30, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00303-CV

____________

 

JOSEPHINE S. ALOBAIDI, Appellant

 

V.

 

THE UNIVERSITY OF TEXAS HEALTH
SCIENCE CENTER AT HOUSTON, Appellee

 



 

On Appeal from the 190th
District Court

Harris County, Texas

Trial Court Cause No. 05-39746

 



 

O P I N I O N








          In
this retaliatory-discharge case, a former employee challenges the trial court=s order granting
the plea to the jurisdiction filed by her former employer, a university center.
The former employee contends that (1) the university center waived sovereign
immunity by previously having pursued an appeal of her workers= compensation
award and (2) prohibiting her from using the state courts to pursue her Labor
Code chapter 451 retaliatory discharge claim[1]
against that institution violates the state and federal equal protection, due
process, and due course of law clauses.  We affirm.

I.  Factual and Procedural Background

In the fall of 2001, appellant Josephine Alobaidi filed a
workers= compensation
claim alleging she had sustained a chemical-inhalation injury while working at
The University of Texas Health Science Center at Houston, which is part of The
University of Texas System.  See Tex.
Educ. Code Ann. ' 65.02(a)(9) (Vernon 2002).  The
University of Texas System was the party against whom Alobaidi asserted her
workers= compensation
claim, but Alobaidi named only The University of Texas Health Science Center at
Houston as the defendant in this anti-retaliation suit.  Because the difference
between these two entities does not affect the outcome in this case, we refer
to both entities as Athe Center@ in this opinion.

The Center contested Alobaidi=s workers= compensation
claim, and Alobaidi subsequently prevailed in a contested-benefit hearing
before the Hearings Division of the Texas Workers= Compensation
Commission.  The Center next sought relief in administrative proceedings before
the Commission, and the Commission also denied relief.  The Center then filed
suit for judicial review in the Harris County District Court, alleging Alobaidi
had not sustained a compensable injury.  Following a bench trial, the district
court rendered judgment against the Center and ordered it to pay Alobaidi
attorney=s fees of
$23,075.  The trial court announced its decision in early August 2004.  A few
days thereafter, the Center terminated Alobaidi=s employment.








Alobaidi sued the Center in this case alleging she had been
wrongfully discharged because of her workers= compensation claim. 
The Center responded with a plea to the jurisdiction and a motion to dismiss,
alleging Alobaidi=s claims were barred by the doctrine of
sovereign immunity.  The trial court granted the Center=s plea to the
jurisdiction and dismissed the case.

II.  Standard
of Review

In this appeal, Alobaidi challenges the trial court=s grant of the
Center=s plea to the jurisdiction
and dismissal of her case.  She also challenges the constitutionality of the
statutes on which the trial court=s decision rests. 
In filing a plea to the jurisdiction, a litigant challenges the trial court=s subject-matter
jurisdiction.  Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.
2000).  Because subject-matter jurisdiction is a question of law, we conduct a
de novo review of the trial court=s ruling on the
plea.  See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.
1998).  Likewise, we also apply de novo review to questions raising
constitutional concerns.  See State v. Hodges, 92 S.W.3d 489, 494 (Tex.
2002).          

III.  Issues and
Analysis

A.      Did the trial court err by
holding the university center did not waive sovereign immunity by filing its
district court petition to set aside the award of the Texas Workers= Compensation Commission?

 

In her first issue, Alobaidi argues the trial court erred
in granting the Center=s plea to the jurisdiction because that
institution waived sovereign immunity when it initially filed suit seeking
judicial relief against her in the workers= compensation
case.  Alobaidi bore the burden of alleging facts that affirmatively showed the
trial court had subject-matter jurisdiction.  See Tex. Ass=n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  Absent the State=s consent to suit,
a trial court lacks subject-matter jurisdiction.  Tex. Dep=t of Transp. v.
Jones, 8 S.W.3d 636, 638 (Tex. 1999).








Immunity from suit prohibits suits against the State unless
the State expressly consents to the suit.  Wichita Falls State Hosp. v.
Taylor, 106 S.W.3d 692, 696 (Tex. 2003).  A state agency, such as the
Center, shares this immunity.  See Lowe v. Tex. Tech. Univ., 540 S.W.2d
297, 298 (Tex. 1976); Clark v. Univ. of Tex. Health Sci. Ctr. at Houston,
919 S.W.2d 185, 187 (Tex. App.CEastland 1996, writ denied).  For the
legislature to waive the State=s sovereign immunity, a statute or
resolution must contain a clear and unambiguous expression of the legislature=s waiver of
immunity.  Taylor, 106 S.W.3d at 696; see Tex. Gov=t Code Ann. ' 311.034 (Vernon Supp. 2006).

Alobaidi concedes the legislature has not consented to
workers= compensation
anti-retaliation suits against the Center.  See Tex. Lab. Code Ann. '' 451.001, 451.002
(Vernon 2006) (providing remedies for persons discharged for having filed a
workers= compensation
suit); ' 501.024(6)
(excluding persons University of Texas employees who are covered under Chapter
503); ' 503.002(a) (not
including sections 451.001 and 451.002 as general workers= compensation laws
applicable to The University of Texas employees); see also Clark,
919 S.W.2d at 187B88 (holding the Center immune from workers= compensation
anti-retaliation suits).  Instead, relying on Reata Construction Corp. v.
City of Dallas, she argues the Center waived its sovereign immunity by
seeking district court review of her workers= compensation
award.  See 197 S.W.3d 371 (Tex. 2006).

In Reata Construction, the Texas Supreme Court held that a
governmental entity that brings an action waives immunity from suit for claims
that are germane to, connected with, and properly defensive to its action, to
the extent of an offset.  Id. at 373; see State v. Fid. & Deposit Co. of
Md., 223 S.W.3d 309,
310 (Tex. 2007) (summarizing Reata holding); Tex. Dep=t of Transp. v.
Precision Solar Controls, Inc., 220 S.W.3d 494, 494 (Tex. 2007) (per
curiam) (same).  Thus, Reata Construction provides for a waiver of
immunity only Ato the extent [a party=s] claims offset
those asserted by [the state entity].@  197 S.W.3d at
373.  AOnce it asserts
affirmative claims for monetary recovery, the [state entity] must participate
in the litigation process as an ordinary litigant, save for the limitation that
the [state entity] continues to have immunity from affirmative damage claims
against it for monetary relief exceeding amounts necessary to offset the [state
entity=s] claims.@  Id. at
377.








In the workers= compensation
case, the Center sought judicial review of the appeals panel=s decision
regarding compensability of Alobaidi=s injury.  See
Tex. Lab. Code Ann. ' 410.301 (Vernon
2006).  The Center never asserted a claim for monetary relief.  In its district
court petition, the Center sought a take nothing judgment against Alobaidi and
the costs it expended in the suit.  In the present case, the Center is the
defendant and has not asserted any claim for relief against Alobaidi. 
Therefore, there can be no offset and no waiver of sovereign immunity.  See
Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture, 220
S.W.3d 25, 32 (Tex. App.CSan Antonio 2006, pet. filed) (holding
city water districtCwhich had prayed for judgment and costs
and filed a plea in abatement but had not made affirmative claims for monetary
relief in suit brought by purchaser seeking specific performanceCdid not, by its
conduct, waive governmental immunity to suit).  Accordingly, we overrule
Alobaidi=s first issue.

B.      Do sections 501.024 and
503.002(a) of the Texas Labor Code violate the state and federal equal
protection clauses?

 








In her second issue, Alobaidi argues that prohibiting her
from using the state courts to sue the Center under the Texas Labor Code
violates the equal protection clauses of the state and federal constitutions,
particularly because that institution was able to maintain its earlier action
in the district court.[2] 
Alobaidi complains of (1) Texas Labor Code section 501.024, which excludes The
University of Texas and Texas A&M University employees from coverage under
workers= compensation law
applicable to state employees and (2) section 503.002(a), which does not
incorporate sections 451.001 and 451.002 (authorizing anti-retaliation suits)
as general workers= compensation laws applicable to
University of Texas employees.[3]

The federal constitution provides: ANo State shall . .
. deny to any person within its jurisdiction the equal protection of the laws.@  U.S. Const. amend. XIV, ' 1.  Similarly our
state constitution provides:  AAll free men, when they form a social
compact, have equal rights, and no man, or set of men, is entitled to exclusive
separate public emoluments, or privileges, but in consideration of public
services.@  Tex. Const.
art. I, ' 3.  The federal
analytical approach applies to equal protection challenges under the Texas
Constitution.  Bell v. Low Income Women, 95 S.W.3d 253, 266 (Tex. 2002).

We presume the constitutionality of the statutes challenged
in this case.  See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg.
& Constr. Trades Council, 485 U.S. 568, 575, 108 S. Ct. 1392, 1397B98, 99 L. Ed. 2d
645 (1988).  Alobaidi bears the burden of proving the statutes
unconstitutional.  Edgewood Indep. Sch. Dist. v. Meno, 917 S.W.2d 717,
725 (Tex. 1995).  If the classifications in the statutes do not impinge on a
fundamental right or distinguish between persons on a suspect basis, the
statutes need only be rationally related to a legitimate governmental purpose
to survive Alobaidi=s equal‑protection challenge.  Ford
Motor Co. v. Sheldon, 22 S.W.3d 444, 451 (Tex. 2000).








  Alobaidi concedes this case does not involve a suspect
class.  Instead, she argues it involves a fundamental right, the Aright to access
the courts,@ grounded in the open-courts provision of the Texas
Constitution.  See Tex. Const.
art. I, ' 13.  She then
urges this court to apply a strict-scrutiny analysis.  See City of
Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440, 105 S. Ct. 3249, 3254,
87 L. Ed. 2d 313 (1985) (plurality op.).

The open-courts provision, however, does not apply to
Alobaidi=s claim because
her claim is a statutory, rather than a common-law, claim.   See Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 902B03 (Tex. 2000). 
Additionally, although statutes depriving any relief to medical-malpractice
plaintiffs who fail to file a cost bond and an expert report arguably deprive
such plaintiffs of Aaccess to the courts,@ this court has
applied a rational-basis test to those statutes.  See Andress v. MacGregor
Med. Ass=n, P.A., 5 S.W.3d 855,
859B60 (Tex. App.CHouston [14th
Dist.] 1999, no pet.) (responding to due process challenge and looking only to
whether the legislature acted arbitrarily or irrationally in attempting to
achieve its stated purposes).  Were this court to hold that a fundamental right
is involved every time a statute deprives any person of the right to bring a
statutory claim, many statutes would be subject to strict scrutiny and likely
invalidation.  We decline Alobaidi=s invitation to
apply a strict-scrutiny analysis and instead apply the rational-basis test.








AUnder rational-basis review, where a group
possesses >distinguishing characteristics relevant to interests
the State has the authority to implement,= a State=s decision to act
on the basis of those differences does not give rise to a constitutional
violation.@  Bd. of Trustees v. Garrett, 531 U.S. 356, 366B67, 121 S. Ct.
955, 963, 148 L. Ed. 2d 866 (2001) (quoting City of Cleburne, 473 U.S.
at 441, 105 S. Ct. at 3255).  A>Such a
classification cannot run afoul of the Equal Protection Clause if there is a
rational relationship between the disparity of treatment and some legitimate
governmental purpose.=@  Id. at
367, 121 S. Ct. at 969 (quoting Heller v. Doe, 509 U.S. 312, 320, 113 S. Ct. 2637, 2642, 125 L. Ed. 2d 257
(1993)). 
In other words, legislation survives an equal‑protection challenge so
long as the legislation is rationally related to a legitimate state interest.  Pennell
v. City of San Jose, 485 U.S. 1, 14, 108 S. Ct. 849, 859, 99 L. Ed. 2d 1 (1988).  A state
interest is legitimate so long as it does not Arun afoul of some
specific federal constitutional prohibition, or of some valid federal law.@  See  Lincoln
Fed. Labor Union v. N.W. Iron & Metal Co., 335 U.S. 525, 536, 69 S. Ct.
251, 257, 93 L. Ed. 212 (1949).

The
legislative record need not show the legislature=s reasons.  See Garrett, 531
U.S. at 367, 121 S. Ct. at 964.  Instead, the party challenging the
constitutionality of legislation has the burden to negate A>any reasonably conceivable state of
facts that could provide a rational basis for the classification.=@  Id. (quoting Heller,
509 U.S. at 320, 113 S. Ct. at 2643) (internal quotation omitted).  The
rational basis a reviewing court envisions need not be the one that actually
motivated the legislature.  See FCC v. Beach Commc=ns, Inc., 508 U.S. 307, 315, 113 S. Ct. 2096,
2102, 124 L. Ed. 2d 211  (1993).

In Richards v. Texas A&M University System, the
Waco Court of Appeals explained one possible rationale:

The A & M and UT systems are the only state educational
institutions for whose employees the State has not waived sovereign immunity
from suit under the Anti‑Retaliation Law.  Those institutions also share
the distinction of being the only state educational institutions that are
authorized to meet their workers= compensation obligations by self‑insurance.  See
Tex. Lab. Code Ann. '' 502.022, 503.022 (Vernon 1996). 
The distinction between insured and self‑insuring entities can constitute
a valid rational basis for a distinction between them.  For example, the
Supreme Court of Mississippi has held that a statute that waived sovereign
immunity for municipalities that participated in an insurance plan, but did not
waive it for municipalities that self‑insured, did not deny equal
protection.  Mosby v. Moore, 95‑CA‑00672‑SCT, &  & 17‑21 (Miss. 1998), 716 So.2d 551, 555B56.








The costs of workers= compensation insurance claims and suits can be high
and unpredictable.  A self‑insuring entity, of course, does not enjoy the
primary benefits of insurance, which are to limit the entity=s exposure by distributing
liability over many insureds.  Cf. Reed Tool Co. v. Copelin, 689 S.W.2d
404, 407 (Tex. 1985).  The Legislature may have believed that it was necessary
to protect the A & M and UT systems from the additional risks and burdens
of potentially large anti‑retaliation lawsuits.  Although we have no
reason to believe that those institutions discharge employees for filing
workers= compensation claims or suits, the
costs of defending against or settling employment suits, even suits that the
defendant believes are groundless, can be substantial.

 

131
S.W.3d 550, 559B60 (Tex. App.CWaco 2004, pet.
denied).

The Waco court further observed that protection of the
public treasury Ais one of the prime reasons for modern
sovereign immunity.@  Id. at 560.  In the present case,
Alobaidi prayed for loss of past earnings, loss of future earnings and
benefits, pain and suffering, emotional distress, loss of reputation, and Asimilar damage,@ prejudgment and
postjudgment interest, attorney=s fees, costs, and Asuch other and
further relief, at law or in equity.@  A rational basis
exists for the legislature not to waive sovereign immunity for such suits
directed against a self-insuring state educational institution.  See id.;
see also Clark, 919 S.W.2d at 188.[4] 
Accordingly, we overrule Alobaidi=s second issue.

B.      Do sections 501.024 and
503.002(a) of the Texas Labor Code violate the federal due process clause and
the state due course of law provision?

 








In her third issue, Alobaidi argues that prohibiting her
from using the state courts to sue the Center under the Texas Labor Code
violates the federal due process clause and the state due course of law
provision.  The federal constitution provides: ANo State shall . .
. deprive any person of life, liberty, or property, without due process of law
. . . .@  U.S. Const. amend. XIV, ' 1.  Our state
constitution provides: ANo citizen of this State shall be deprived
of life, liberty, property, privileges or immunities, or in any manner
disfranchised, except by the due course of the law of the land.@  Tex. Const. art. I, ' 19.  Because
Alobaidi has not asserted or briefed an argument that the substantive due
process analysis under the Texas Constitution is different from that under the
United States Constitution, we apply the analysis under the United States
Constitution.  Under the federal guarantee of substantive due process,
legislation not affecting a fundamental right or interest is valid if it bears
a rational relationship to a legitimate state interest.  Williamson v. Lee
Optical, 348 U.S. 483, 491, 75 S. Ct. 461, 466, 99 L. Ed. 563 (1955).

Presuming, without deciding, that a state entity=s immunity from
suit can ever implicate due process or due course of law concerns, we conclude
the immunity at issue in this case does not.[5] 
As discussed in Section III. A., above, the present case does not affect a
fundamental right, and as explained in Section III. B., above, declining to
waive a self-insuring university system=s immunity from
workers= compensation
anti-retaliation suits bears a rational relationship to the State=s legitimate
interest in conserving the university=s resources. 
Accordingly, we overrule Alobaidi=s third issue.

We affirm the trial court=s judgment.

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered
and Opinion filed October 30, 2007.

Panel consists of
Justices Anderson, Frost, and Mirabal.*

 

 

 

* Senior Justice
Margaret Garner Mirabal, sitting by assignment.









[1]  See Tex.
Lab. Code Ann. '' 451.001B.003
(Vernon 2006).





[2]  Alobaidi states, AHere,
the equal protection issue is one of the government versus a citizen.@  She then asks whether the government can provide
itself a particular right, that is, access to the courts, against one of its
citizens while at the same time denying that citizen an identical right of
access to the courts in an action against the same government.  To the extent
we have addressed that aspect of her argument in Section III. A., above, we do
not revisit it here.  Moreover, Alobaidi=s
characterization of her equal protection issue rests on the unwarranted
assumption that an action seeking review of a workers= compensation award concerns the same statutory right
as an action for retaliatory discharge.





[3]  An identical provision applies to employees of The
Texas A&M University System.  See Tex.
Lab. Code Ann. ' 502.002(a) (Vernon 2006). The legislature enacted the
predecessor to chapter 451 (the anti-retaliation provisions) in 1971.  See
Act of April 22, 1971, 62d Leg., R.S., ch. 115,  '' 1B3,  1971 Tex. Gen. Laws 884, 884B85 (previously codified as Rev. Civ. Stat. Art. 8307c,
'' 1B3) (repealed
and recodified 1993).  In 1981, the legislature included the anti-retaliation
provisions in a list of provisions applicable to state employees.  See
Act of May 31, 1981, 67th Leg. R.S., ch. 352, '' 1B2, 1981 Tex. Gen. Laws 937, 937 (repealed and
recodified 1993).  The 1981 legislation did not refer to the provisions
covering The University of Texas System or Texas A&M System employees.  See
id. '' 1B4.  The
legislature=s first post-1971 amendment of the predecessor to
section 503.002(a) did not include the anti-retaliation provisions as sections
applicable to University of Texas employees.  See Act of Dec. 12, 1989,
71st Leg., 2d C.S., ch 1, ' 15.39, 1989
Tex. Gen. Laws 1, 109B10 (repealed and recodified 1993). 





[4]  Alobaidi distinguishes Richards and Clark
because those cases did not involve situations in which the university was the
first party to avail itself of the courts.  In a similar vein, she also argues
she was not given the same right as the Center in this case.  The Center=s petition under Texas Labor section 410.301 did not
involve the same type of action or statutory right as a suit under sections
451.001 and 451.002.  See Section III. A., and  n.2, supra.





[5]  In Federal Sign v. Texas Southern University,
the Texas Supreme Court opined, AThe
State=s immunity to suit is, purely as a matter of
sovereignty, impervious to due process concerns.@  951 S.W.2d 401, 411 (Tex. 1997).